**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHEN BENJAMIN,** | ) | **CASE NO. 5:12-cv-01372** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **v.** | ) | **OPINION AND ORDER** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Plaintiff's Objection to the Report and

Recommendation Decision of Magistrate Judge James R. Knepp II, recommending that the Court

affirm the Commissioner's decision to deny Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI) for Plaintiff.  For the following reasons, the Court

ADOPTS IN FULL the Report and Recommendation.

### I. FACTUAL BACKGROUND[1]

Plaintiff, Stephen Benjamin, filed a Complaint seeking review of the Commissioner's

---

[1]For a complete overview of the facts, see Magistrate Judge James R. Knepp II's Report

and Recommendation.

decision to deny supplemental SSI and DIB after originally filing applications on February 18, 2009. These applications were denied both initially and on reconsideration. During a hearing with an Administrative Law Judge (ALJ), the ALJ again found that Plaintiff was not disabled within the meaning of 20 C.F.R. § 416.905(a), and the decision was made final with the Commissioner after the Appeals Council denied Plaintiff's request for review.

Plaintiff has been unemployed since 2004. Previous employment includes working as a security guard from 1982 to1991 and as a labor consultant from 1995 to 2004. Plaintiff claims he cannot work because of chest pain, dizzy spells, tremors in his hands, and shortness of breath. After filing his applications for SSI and DIB in February 2009, Plaintiff visited numerous medical professionals over the course of the following year. At a consultive medical examination with a Dr. McKitty, Plaintiff was diagnosed with dyspnea and breathing problems, although a muscle evaluation report showed normal grasp, manipulation, pinch, and fine coordination in both hands. The following day at Summa Western Reserve Hospital, Plaintiff was diagnosed with atrial fibrillation, shortness of breath, hypersensitive urgency, tobacco use, marijuana use, chest pain, and a left upper lobe density. The doctor noted that despite Plaintiff's complaints about shortness of breath, his "vital signs, saturations, and x-rays were all normal."

A month later, on June 6, 2009, at a routine follow-up with cardiologist Dr. Heupler, Plaintiff's atrial fibrillation was described as "minimally symptomatic" and controlled. In August, during a visit to Dr. Heupler's office, Nurse Practitioner Maureen Mayer noted his substantial improvement in shortness of breath and that he showed no signs of heart failure. A later visit to Dr. Heupler would also show great improvement, causing Dr. Heupler to be "perplexed" by Plaintiff's complaints of shortness of breath. More tests would show good

2

exercise capacity and normal results except an abnormal left ventricular function after exercise.

During a visit on November 20, 2009, Carol Little, an occupational therapist, evaluated Plaintiff's functional capacity. The main factors limiting Plaintiff's work capacity were tremors and depression, according to Ms. Little. The tremors, according to Ms. Little, precluded Plaintiff from fine manipulation coordination. Ms. Little found that Plaintiff should be able to function at the classification of sedentary and could not lift beyond twenty pounds. Several months later, Dr. Hutchinson-Ulloa signed the assessment, though she did not participate in it. Later visits to Dr. Heupler's office revealed normal results and Plaintiff even reported feeling the best he had in years to Dr. Heupler in June 2010.

During the hearing, the ALJ went through the five-step evaluation process required for such hearings. Ms. Little's functional capacity evaluation and Dr. Hutchinson-Ulloa's signature on it were noted, but the ALJ assigned little weight due to Ms. Little not being an acceptable medical source and the fact that Dr. Hutchinson-Ulloa did not examine Plaintiff for the evaluation in question. The ALJ also noted that Ms. Little wrote on the evaluation that the results should not be used to gauge functional capacity because of Plaintiff's "sub-maximal effort." A later physical Residual Functional Capacity (RFC) assessment by Dr. Cho would show some limitations due to breathing problems and that Plaintiff should avoid medium exposure to fumes, odors, gases, dust, and poor ventilation, but no other limitations. A vocational expert, Ms. Burke, testified that Plaintiff was capable of performing past work, specifically as a security guard. Ms. Burke further testified that Plaintiff was capable of performing work as a cook-helper and bagger, addressing the fifth-step of the evaluation process. Magistrate Judge James R. Knepp II provided the Report and Recommendation, which

3

recommended the Court affirm the Commissioner's decision.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(b), a review *de novo* is required of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings of the Magistrate Judge and need only conduct a new hearing where required by law or at the District Judge's discretion. Local Rule 72.3(b).  Deference must be given to the ALJ decision if there is substantial evidence supporting the conclusion it reached, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F. 3d 611, 614 (6th Cir. 2003).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F. 2d 1028, 1030 (6th Cir. 1992).  Judicial review of an ALJ's decision involves determining whether there was substantial evidence supporting the conclusion and whether the applicable law was applied correctly. *Blakley v. Comm'r of Soc. Sec.,* 581 F. 3d 399, 406 (6th Cir. 2009) (citing 42 U.S.C. § 405(g)).

## III. LAW AND ANALYSIS

Plaintiff has advanced three arguments for reversing the ALJ's decision or remanding it for further hearing.  The first argument is that the RFC findings were unsupported by substantial evidence.  Plaintiff next argues that the ALJ misapplied the Treating Physician Rule (TPR) in regards to the functional capacity assessment conducted by Ms. Little.  The third argument is that the ALJ erred in his sequential analysis at the last two steps.  For the following reasons, the Court finds that the ALJ's conclusions were adequately supported by substantial evidence and

the law was correctly applied.

**A) There is Substantial Evidence Supporting the ALJ's Findings**

Plaintiff argues that there was insufficient evidence for the ALJ to conclude that he is capable of medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with an exception to avoid working with fumes, odors, dust, gases, and poor ventilation.  Plaintiff's disability claim was based on his alleged tremors and breathing problems.  A disability, as defined in 20 C.F.R. § 416.905(a), is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Unless objective medical evidence is available, the ALJ must consider the entire record in determining the credibility of the statements. Social Security Ruling (SSR) 96-7p, 1996 WL 374186.  Substantial evidence is that which a reasonable mind would accept as adequate to support a conclusion.  *Besaw*, 966 F. 2d at 1030.

The first mention of Plaintiff's alleged tremors came on November 20, 2009, during a visit to Ms. Little, an occupational therapist.  Occupational therapists are not an acceptable medical source for these purposes.  *Hash v. Comm'r of Soc. Sec.*, 309 Fed. Appx. 981, 987 (6th Cir. 2009).  While there is a mention of shakiness during a visit to the Cuyahoga Falls General Hospital on June 1, 2009, Plaintiff was never otherwise diagnosed with tremors.  Of all the visits to a medical facility, the only other mentions of his hands suggest a different conclusion, including manual muscle testing with Dr. McKitty on May 6, 2009, where all indicators were normal, including grasp, manipulation, pinch, and fine coordination.

In her assessment, Ms. Little even acknowledged the difficulty identifying Plaintiff's

true abilities due to his "sub-maximal effort" and commented that Plaintiff's "[d]emonstrated physical function should not be used to project actual work capacity since he may be able to function at a higher level than willing."  Even if this evidence were credible, the court may not overturn the ALJ's decision so long as substantial evidence also supports the conclusion reached by the ALJ.  *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 477 (6th Cir. 2003).  The ALJ's conclusion regarding these alleged tremors was supported, not just by Dr. McKitty's notes, but also by the lack of any indication of tremors anywhere else in Plaintiff's medical records.  The evidence from Dr. Cho that Plaintiff has no limits except fumes, odors, dust, gases, and poor ventilation further supports the conclusion.

Plaintiff's breathing problems first show up in medical records on May 6th, 2009, during a visit to Dr. McKitty for a consultive medical examination.  A month later, Dr. Heupler, whom Plaintiff had listed as one of his treating and examining physicians for the period of March through September, 2010 (the other being Dr. Lefever), noted that his atrial fibrillation was "minimally symptomatic" and controlled.  By July 25, 2009, tests showed Plaintiff's pulmonary function was within the normal range.  On August 26, 2009, Dr. Heupler commented on being "perplexed" by Plaintiff's complaints of shortness of breath as there was no cardiac explanation.  The mostly normal results from objective medical evidence alone serve as substantial evidence supporting the conclusion that Plaintiff is capable of medium work while avoiding concentrated exposure to fumes, dust, gases, and poor ventilation.  This evidence is only reinforced by Ms. Hill's assessment, which never identified breathing problems as a limiting factor to his work success, as well as the lack of any restrictions placed on Plaintiff by a treating physician.

**B) The Treating Physician Rule Was Properly Applied**

Plaintiff further argues that the TPR was misapplied in relation to Ms. Little's functional capacity assessment and to Dr. Hutchinson-Ulloa's signature.  A treating physician's opinion is given greater deference than those of a non-treating physician because of the former's ability to provide a longitudinal picture of an impairment and unique perspectives on a claimant's condition. *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d 234, 242 (6th Cir. 2007).  To be a treating physician, there must be an ongoing treatment relationship and the evidence must show a frequency of visits consistent with accepted medical practice for the type of treatment required for the particular condition(s).  20 C.F.R. § 416.902.  The rule "guarantees claimants that the agency will always give good reasons for how much weight it accords the treating physician's opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507 (6th Cir. 2006).  In considering how much weight to afford a physician's opinion, the ALJ should consider the length and nature of the treatment relationship; the evidence provided by the physician; the consistency of the opinion with the record; and whether the physician was practicing in her specialty.  20 C.F.R § 404.1527(d).

The TPR does not apply to Ms. Little, as occupational therapists are not an acceptable medical source for the present purposes. *Hash.*, 309 Fed. Appx. at 987.  The only way the assessment she conducted can be afforded any weight is through Dr. Hutchinson-Ulloa.  Dr. Hutchinson-Ulloa, however,  was not present at Ms. Little's assessment and merely signed it several months later.  To consider the assessment as Dr. Hutchinson-Ulloa's opinion would require a stretch that this Court is not willing to make.  Even if the assessment is considered Dr. Hutchinson-Ulloa's opinion, the assessment was properly considered and given little weight

7

because it was inconsistent with more objective medical tests and, again, Dr. Hutchinson-Ulloa was not present at the assessment. Plaintiff cites to *Blakley,* 581 F. 3d 399 (6th Cir. 2009) in his argument that the ALJ must provide a good reason for discrediting a treating physician's opinion. The present case is distinguishable. In *Blakley*, the ALJ entirely ignored one treating physician's opinion and gave little weight to two others without providing an explanation. Here, even if the assessment performed by Ms. Little does qualify as Dr. Hutchinson-Ulloa's opinion, the ALJ explained that it gave little weight to the assessment because it was done by Ms. Little, and it was "inconsistent with the weight of the evidence." ECF DKT #12, at 25-26. With the appropriate consideration given to the assessment, there was no error in applying the TPR. See *Ealy v. Comm'r of Soc. Sec.*, 594 F. 3d 504, 514 (6th Cir. 2010) (finding that the ALJ correctly accorded little weight to a physician's opinion because of a lack of supporting evidence).

**C) There Was No Error in the ALJ's Sequential Analysis**

Plaintiff also argued that the ALJ erred at the fourth and fifth steps of the sequential analysis. In determining whether there is a disability, a five-step evaluation process from 20 C.F.R. § 404.1520 and 416.920 is applied. The fourth step considers the claimant's RFC and whether he can perform past relevant work. *Id.* The fifth step considers a claimant's RFC and whether he can do any other work. *Id.* The ALJ determined that Plaintiff was capable of performing past relevant work as a security guard, which Plaintiff did from 1982 through 1991. Having conceded his DIB claim, however, the relevant time period for past work is determined by when the claim was filed, meaning the period goes back only to 2004. The Magistrate Judge properly addressed this in his Report and Recommendation by noting that the ALJ took the analysis to the fifth step and noted the testimony of a vocational expert, who concluded Plaintiff

8

could work as a bagger or cook-helper.  Since Plaintiff may adjust to other work, a conclusion supported by substantial evidence, the ALJ's determination was correct.  *See* 20 C.F.R §416.920(g).

## IV. CONCLUSION

For the foregoing reasons, this Court ADOPTS the Magistrate Judge's Report and Recommendation and affirms the Commissioner's decision.

IT IS SO ORDERED.

<u>s/ Christopher A. Boyko</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**

Dated: July 17, 2013